IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HOLLY HANSON,  　　　　　　　　　　　　　　No. 3:15-cv-02237-HZ

　　　　　Plaintiff,　　　　　　　　　　　　　　OPINION & ORDER

　　v.

COMMISSIONER SOCIAL
SECURITY ADMINISTRATION,

　　　　　Defendant.

Merrill Schneider
Schneider Kerr Law Offices
P.O. Box 14490
Portland, OR 97293

　　　Attorney for Plaintiff

Billy J. Williams
United States Attorney, District of Oregon
Janice E. Hebert
Assistant United States Attorney
U.S. Attorney's Office, District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

1 - OPINION & ORDER

Alexis Toma
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Holly Hanson brings this action for judicial review of the Commissioner's final decision denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act and Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Commissioner's decision is reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

      Plaintiff applied for SSI and DIB on February 17, 2012, alleging an onset date of May 30, 2008. Tr. 62, 75.[1] Her application was denied initially and on reconsideration. Tr. 62-114. On March 28, 2014, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 35-61. On June 11, 2014, the ALJ found Plaintiff not disabled. Tr. 29. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on glaucoma, Lyme disease, liver cirrhosis, depression, anxiety, muscle spasms, and insomnia. Tr. 62. Plaintiff was 48 years-old at the time of the administrative hearing. Id. Plaintiff has a high school diploma and a vocational history consisting mostly of office work. Tr. 40, 322.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 13.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See, e.g., Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since May 30, 2008, the alleged onset date. Tr. 20. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: lumbar stenosis and cervical radiculitis, degeneration in hands, right shoulder degenerative joint disease, supraspinatus tear, tendinopathy, and bursitis. Id. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 21-22. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), with the following limitations:

> [C]laimant is limited to lifting and carrying ten pounds with her right arm. She can never crouch, crawl, or climb ladders, ropes, or scaffolds. She can frequently balance and climb ramps and stairs. She can occasionally kneel. She should avoid even moderate exposure to workplace hazards. [S]he can never perform overhead reaching with her dominant, right upper extremity. She can occasionally finger and handle bilaterally. She must be permitted to use a hand-held assistive device, such as [a] cane while standing and walking.

Tr. 22. The ALJ concluded that Plaintiff is unable to perform any past relevant work. Tr. 27. However, at step five the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as gate guard, surveillance system monitor, and call out operator. Tr. 28. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 29.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the

record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than preponderance." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Id.; see also Batson, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff contends that the ALJ erred by (1) rejecting the opinion of treating provider Dr. Laplante; (2) failing to assess whether Plaintiff meets or equals Listing 1.04; (3) failing to perform a psychiatric review technique in finding Plaintiff's mental health impairments non-severe; and (4) improperly discounting Plaintiff's credibility. The Court upholds the ALJ's credibility finding and otherwise agrees with Plaintiff that the ALJ erred.

## I.    Treating Provider Dr. Laplante

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v.

Chater, 81 F.3d 821, 830 (9th Cir. 1996). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. Id.; 20 C.F.R. §§ 1527(c)(1)-(2), 416.927(c)(1)-(2).

If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Holohan, 246 F.3d at 1202. If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. §§ 1527(d)(2), 416.927(d)(2); Orn, 495 F.3d at 631. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).

Approximately two weeks after the administrative hearing, on April 16, 2014, Plaintiff sought treatment from Dr. Cheryl Laplante. Tr. 375. On May 1 and May 5, 2014, Dr. Laplante filled out disability questionnaires provided to her by Plaintiff's counsel. The record does not include any actual treatment records from Dr. Laplante's office.

In the May 1, 2014 form, Dr. Laplante stated that Plaintiff's medical conditions include lumbar stenosis, osteoarthritis cervical radiculopathy, right shoulder degenerative disease with supraspinatus tendon tear, depression, anxiety, a history of Lyme disease, arthritis, and glaucoma. Id. Dr. Laplante noted that Plaintiff's primary symptoms are low back pain radiating into her right leg, joint pain in her hands, right shoulder pain, and numb left fingers. Id.

6 - OPINION & ORDER

In response to questions regarding Plaintiff's residual physical functional capacity, Dr. Laplante opined that Plaintiff can occasionally lift and/or carry less than 10 pounds; she cannot frequently lift and/or carry any weight; she can stand and/or walk for 15 minutes at a time; she can stand and/or walk for an hour in an eight-hour day; she can sit for 30 minutes at a time; she can sit for an hour in an eight-hour day; and any time she is not sitting, standing, or walking, Plaintiff should be lying down or in a recliner chair, due to her lower back pain, numbness, and weakness in her right leg. Tr. 376. Dr. Laplante also opined that Plaintiff is limited in her abilities to push and/or pull. Id. In a series of check-box assessments, Dr. Laplante opined that Plaintiff could never engage in the following activities: climbing, balancing, stooping, bending, kneeling, crouching, or crawling. Id. She also opined that Plaintiff could only occasionally engage in the following: reaching overhead with her left arm; reaching at shoulder height with her left arm; handling; fingering with her right hand (she could never finger with her left hand due to numbness); and feeling with her right hand. Id.

Dr. Laplante estimated that, for 20% of a standard workweek, Plaintiff's attention and concentration would be impaired to such a degree that she could not be expected to perform even simple work tasks. Id. Further, Dr. Laplante would expect Plaintiff to miss 16 hours or more a month because of her impairments, symptoms, medications, and their side effects. Id.

On May 5, 2014, Dr. Laplante completed another form provided by Plaintiff's counsel. Dr. Laplante made a checkmark indicating that Social Security Listed Impairment 1.04(A), Disorders of the Spine, applied to Plaintiff. Tr. 379. Specifically, Dr. Laplante indicated that Plaintiff had evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or

muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). Id.

The ALJ afforded "little weight" to Dr. Laplante's opinions. He found that the level of limitation Dr. Laplante proposed was not supported by the longitudinal record, "including the objective imaging studies, treatment notes from Dr. Nyrone and Mr. Njenga, and the objective observations of Drs. Yuen and Ellison[.]" Tr. 27.

Plaintiff argues that the ALJ's reasoning falls short of Ninth Circuit standards because the ALJ "simply alleged inconsistency with objective findings and treatment notes in the record without actually identifying any inconsistencies." Pl. Br. 6, ECF 17. The Court agrees.

An ALJ errs when he assigns little weight to a medical opinion "while doing nothing more than . . . asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014). Here, the ALJ's recitation of boilerplate language finding that Dr. Laplante's opinions are not supported by the longitudinal record does not form a substantive basis for his decision to afford little weight to Dr. Laplante's opinion. The fact that the ALJ included examples of this "longitudinal record," such as treatment notes and observations from other doctors, does not remedy the error because he does not point to any specific notes or observations that conflict with Dr. Laplante's opinion. In essence, he asserts without explanation that other doctors' opinions are more persuasive. This is not enough to constitute specific and legitimate reasons supported by substantial evidence.

Defendant points to evidence in the imaging studies, treatment notes, and objective observations that allegedly conflict with Dr. Laplante's opinions. Because this evidence was cited by the ALJ elsewhere in his decision, Defendant argues that "the agency's path may be

reasonably discerned," and, thus, the Court should affirm the ALJ's decision. Def.'s Br. 5, ECF 19 (quoting Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012)).

The lesson of Molina, however, is not applicable here. In Molina, the Ninth Circuit concluded that an ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims. Id. at 1121-22. In other words, even though the ALJ in Molina had failed to provide germane reasons for rejecting a witness's testimony, the Court could reasonably discern the reasons because they were the same as those used to discredit the claimant's testimony. Id.

Here, Defendant asks the Court to find that, even though the ALJ did not provide sufficiently specific reasons to discount Dr. Laplante's testimony, the ALJ's reasoning may be reasonably discerned by reviewing the ALJ's summary of other medical opinions and evidence. Defendant's attempt to rehabilitate the ALJ's decision exceeds the bounds of the guidance provided by Molina and, instead, impermissibly enters the realm of post-hoc rationalization. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (court cannot affirm finding based on reasons or evidence that the ALJ did not discuss); see also Mai Chang v. Comm'r of Soc. Sec. Admin., 507 F. App'x 698, 699 (9th Cir. 2013) ("we cannot affirm based on a rationale the ALJ never specifically articulated")(citing Bray v. Comm'r, 554 F.3d 1219, 1226 (9th Cir. 2009)). Further, even if this Court looked to the evidence cited by Defendant, it is not clear that it contradicts Dr. Laplante's opinion.

In sum, while there may be reasons to discount Dr. Laplante's opinion embedded in the ALJ's summary of other medical evidence, the ALJ must discuss those reasons and link such evidence to his conclusion that Dr. Laplante's findings are unsupported. This Court may not

remedy the ALJ's error by making its own independent findings regarding Dr. Laplante's opinion.

## II.    Listing 1.04

According to Plaintiff, the ALJ erred at step three of the analysis because he failed to address whether Plaintiff's impairments are equivalent to Social Security Listing 1.04(A). Dr. Laplante opined that Plaintiff meets the listing requirements. Tr. 379.

A claimant bears the burden of proving she meets or equals a listing. Bowen, 482 U.S. at 146 n.5. To establish that an impairment is medically equivalent to a listed impairment, it is the claimant's burden to show that her impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). For an impairment or combination of impairments to equal a listing, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990), superseded by statute on other grounds as stated in Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir. 2013); see 20 C.F.R. § 416.926(a)-(b). "[A]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet . . . a listed impairment." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). "A boilerplate finding is insufficient[.]" Id.

Within the "Musculoskeletal System-Adult" category, there are several types of specific musculoskeletal impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Listing 1.04 addresses disorders of the spine resulting in compromise of a nerve root or the spinal cord. Id. Listing 1.04 contains three different types of spine disorders. Id. At issue in this case is Listing 1.04(A) which requires evidence of "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or

muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Id.

In response to a form provided by Plaintiff's counsel, Dr. Laplante indicated that Plaintiff meets the requirements of Listing 1.04(A). Dr. Laplante also provided a narrative explanation in which she wrote: "Pt. has moderately severe lumbar stenosis with right radiculopathy. Uses a straight cane to walk. Has some numbness, weakness of right leg." Tr. 380.

The ALJ reviewed the listings and concluded that the objective medical evidence does not support a finding of disability under the Musculoskeletal System or Neurological System listings. Tr. 22. While the ALJ provided this overall reference to the Musculoskeletal System listings, he did not provide any explanation as to whether Plaintiff meets Listing 1.04(A).

The Court agrees with Plaintiff that the ALJ did not give an adequate explanation for why Dr. Laplante's opinion did not suffice to find that Plaintiff met the listing requirement of Listing 1.04(A). Defendant's argument rests upon the assumption that the ALJ properly discounted Dr. Laplante's opinion and, therefore, Dr. Laplante's conclusion that Plaintiff meets Listing 1.04(A) can be disregarded. See Def.'s Br. 8 ("Plaintiff's assertion is essentially a re-statement of her previous argument that the ALJ improperly rejected Dr. Laplante's check-box form. Because the ALJ properly discounted that evidence, Plaintiff's evidence is not persuasive."). However, as discussed above, the Court finds that the rejection of Dr. Laplante's opinion was not supported by substantial evidence. Therefore, the ALJ erred by not addressing Dr. Laplante's opinion regarding Listing 1.04(A).

///

11 - OPINION & ORDER

**III.    Step Two Review of Plaintiff's Mental Health Impairments**

Plaintiff contends that the ALJ erred in his step two analysis of the severity of Plaintiff's mental health impairments because he failed to perform a psychiatric review technique. Defendant responds that the ALJ's error was harmless.

When evaluating psychiatric impairments, the ALJ must follow a "special psychiatric review technique" and document his findings and conclusions in his decision. Chaudhry v. Astrue, 688 F.3d 661, 670 (9th Cir. 2012) (quoting Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011)).

> [A]n ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. In making this determination, an ALJ is bound by 20 C.F.R. § 404.1520a. That regulation requires those reviewing an application for disability to follow a special psychiatric review technique. Specifically, the reviewer must determine whether an applicant has a medically determinable mental impairment, rate the degree of functional limitation for four functional areas, determine severity of the mental impairment (in part based on the degree of functional limitation), and then, if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder.

Keyser, 648 F3d at 725 (citations omitted). An ALJ's failure to follow the psychiatric review technique is harmless if the claimant does not present sufficient evidence to demonstrate a "colorable claim of mental impairment." Id. at 726.

Plaintiff filed her disability claim based on depression and anxiety, among other illnesses, injuries, and conditions. Tr. 62. The record contains several treatment notes and diagnoses regarding Plaintiff's mental health. For example, in February of 2010, treating physician Dr. Nyone noted that Plaintiff presented with complaints of panic attacks and anxiety, although she denied depression. Tr. 269. In May of 2012, consultative examiner Dr. Stradinger diagnosed Plaintiff with generalized anxiety disorder, per history; rule out alcohol-induced anxiety disorder, with panic attacks; mood disorder NOS; and rule out alcohol dependence. Tr. 325. Dr. Stradinger

found that Plaintiff has a "moderate impairment for interacting with co-workers and the public, given her anxiety." Id. In June of 2013, treating physician Dr. Njenga noted that Plaintiff's symptoms included "anxiety, depressed mood, difficulty concentrating, fatigue and somatic symptoms." Tr. 350. In November of 2013, Plaintiff presented for follow-up of depression and stated that Zoloft had stabilized her condition. Tr. 340. In April of 2014, consultative examiner Dr. Ellison diagnosed Plaintiff with "[c]hronic depression and anxiety helped by treatment." Tr. 366.

Defendant argues that the evidence supports a finding that Plaintiff's mental health impairments are non-severe and, therefore, the ALJ's failure to conduct a psychiatric review technique is harmless. In support of its argument, Defendant notes that the ALJ discounted Dr. Stradinger's opined limitation regarding Plaintiff's ability to interact with co-workers and the public, Dr. Njenga's treatment notes contain only one complaint of anxiety symptoms over at least 10 visits, and Plaintiff generally had normal psychiatric findings during her visits to Dr. Nyone's clinic. Def.'s Br. 10-11, ECF 19. In addition, Defendant points to Plaintiff's testimony that Zoloft helped treat her mental health symptoms. See Tr. 52 (testifying that "[Zoloft is] working fine. I still have episodes [of anxiety and depression], but I take it daily. Sometimes I have to take an extra one during the day.").

Defendant's argument regarding the severity of Plaintiff's mental health impairments is compelling. However, it is the ALJ's role, not this Court's, to weigh the medical evidence and determine the severity of Plaintiff's impairments. This is not like other cases from the Ninth Circuit where the duty to develop the record regarding a mental impairment was not triggered because the claimant failed to point to any objective medical evidence of a mental impairment. See, e.g., Spence v. Colvin, 617 F. App'x 752, 754 (9th Cir. 2015) (finding ALJ's failure to

address the limitation factors under 20 C.F.R. § 404.1520 harmless error because there was no objective evidence of a mental impairment and comments by medical providers suggesting that claimant talked incessantly and had trouble staying on track were insufficient); <u>Alekseyevets v. Colvin</u>, 524 F. App'x 341, 343 (9th Cir. 2013) (finding that utilization of the psychiatric review technique was not required because the ALJ correctly determined that claimant failed to present a colorable claim of mental impairment); <u>Moore v. Comm'r of Soc. Sec.</u>, 500 F. App'x 638, 640 (9th Cir. 2012) (ALJ's failure to follow the psychiatric review technique was harmless because there was no evidence of an impairment of claimant's ability to do basic work activities).

Here, Plaintiff presented several pieces of evidence and testimony regarding her alleged mental impairments. In such a case, the Court must "reject the [] Commissioner's contention that even if the ALJ erred in this regard, [Plaintiff] has nonetheless failed to establish the existence of any mental impairments. It is not for [the Court] to gauge on appeal the extent and severity of [Plaintiff's] mental impairments. Rather, that task falls to the ALJ in the first instance, and must be completed through the application of the special psychiatric review technique." <u>Angevine v. Colvin</u>, 542 F. App'x 589, 591 (9th Cir. 2013). Accordingly, the ALJ's error was not harmless.

**IV.    Plaintiff's Credibility**

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting her testimony about her impairments and their limiting effects. In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. § 404.1529. First, the ALJ determines whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282 (9th Cir. 1996). If such evidence exists, and barring affirmative evidence of malingering, the ALJ must

give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Id. at 1284; see also Lingenfelter, 504 F.3d at 1036. If the record contains affirmative evidence of malingering, the ALJ need only provide specific and legitimate reasons for an adverse credibility finding. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ may consider many factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). In addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. Morgan, 169 F.3d at 600. Where the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir.1993); see also Morgan, 169 F.3d at 599.

Plaintiff testified that she last worked in 2008 and that she can no longer work because of her pain. Tr. 40. According to Plaintiff, her hands hurt all of the time and she cannot close her pinkie finger on her left hand. Tr. 41. Plaintiff testified that she cannot type, open jars, snap her bra, or grab items. Tr. 40, 42, 45. Plaintiff testified that she can only lift her shoulder "up so far" because of pain. Id. Plaintiff wears wrist braces and walks with a cane to help with balance. Tr.

45, 46, 48. Lifting a gallon of milk would be very difficult and she would not be able to do it with one hand only. Tr. 47.

Plaintiff also testified that the side effects from her medication make her sleepy. Tr. 42. In addition, she suffers from anxiety attacks for a variety of reasons, such as stress, "being uncomfortable," and menopause. Tr. 51.

Plaintiff testified that "every day activities are hard" for her. Tr. 44. She watches television, reads, does a small amount of chores, and rests a lot. Tr. 44, 52. Plaintiff spends time with her daughter, who visits her frequently. Tr. 52. Plaintiff does not drive because of the pain in her hands and her blurry vision. Tr. 53.

The ALJ found Plaintiff "not entirely credible" because her allegations of disability are unsupported by the medical record and treatment history. While the ALJ found that the objective medical evidence, including x-rays and MRI images, lend some credibility to her allegations of pain and physical limitations, "the objective observations of Dr. Nyrone and Mr. Njenga, combined with [Plaintiff] only having a prescription for Tramadol, an opioid analgesic, are stronger persuasive evidence that the limitations are not so severe as to preclude her from all work." Tr. 24. The ALJ noted that Plaintiff's treatment history has been "sporadic, routine, and conservative." Tr. 24.

For example, at an October 2010 appointment with Dr. Nyrone, Plaintiff presented with complaints of pain in her elbows, hands, and feet. Tr. 285. However, upon examination, her shoulders, wrists, hands, feet, and elbows were normal, except for "minimal" tenderness over the bilateral lateral epicondylar areas. Id. At appointments throughout 2013, Plaintiff's mood, affect, attention, and orientation were normal.  Tr. 345, 350-51. Plaintiff reported that Tramadol worked

well for her pain. Tr. 339. She was also prescribed Sertraline and Trazodone for depression and insomnia, respectively. Tr. 340.

The ALJ provides sufficient reasons, supported by substantial evidence, to discount Plaintiff's credibility. The Court disagrees with Plaintiff's characterization of the ALJ's credibility finding as nothing more than a longitudinal review of the record, followed by a blanket statement discounting her credibility. See Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). While the ALJ's analysis regarding Plaintiff's credibility could have been more detailed and specific, the ALJ provides two clear and convincing reasons—conflicts with the medical record and Plaintiff's treatment history—to discount her testimony. The ALJ's credibility finding is affirmed.

**V.    Remand for Further Administrative Proceedings**

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Id. However, generally, when an ALJ's decision is reversed, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir.2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," and "remand for an immediate award of benefits is appropriate." Id.

Here, issues remain regarding the proper weight to assign the opinion of Dr. Laplante and whether application of the special psychiatric review technique would result in a finding of a severe mental health impairment. Plaintiff concedes that the proper remedy is to remand for

further proceedings. See Pl.'s Br. 10 ("The ALJ's decision must be remanded for full and fair consideration.").

## CONCLUSION

The Court affirms the ALJ's credibility finding but reverses and remands the case for further administrative proceedings because the ALJ erred by rejecting the opinion of treating provider Dr. Laplante; failing to assess whether Plaintiff meets or equals listing 1.04; and failing to perform a psychiatric review technique in finding Plaintiff's mental health impairments non-severe.

IT IS SO ORDERED.

Dated this __12__ day of _____January_____, 2017

_____
MARCO A. HERNÁNDEZ
United States District Judge